RYAN MURRAY and JOYCE MAYERS, ) Appeal from the

) Circuit Court of 

Plaintiffs-Appellants, ) Cook County.

)

)

)

CHICAGO YOUTH CENTER, )

a Corporation; JAMES COLLINS; ) No. 98 L 5822

CHICAGO BOARD OF EDUCATION, )

a School Board; and SPORTS SUPPLY  )

GROUP, a Corporation,         ) Honorable

) Martin S. Agran,

Defendants-Appellees. ) Judge Presiding.

JUSTICE REID delivered the opinion of the court:

The trial court granted the defendants, James Collins, Chicago Youth Center (CYC), Chicago Board of Education (the Board) and Sports Supply Group (SSG)
(footnote: 1), summary judgment.  On appeal, the plaintiffs, Ryan Murray and Joyce Mayers, argue that: (1) the trial court erroneously determined that Collins, CYC and the Board were afforded immunity under sections 2-201 and 3-108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (the Act)(745 ILCS 10/2-201; 3-108(a)(West 1992)) and (2) the trial court erred when it granted summary judgment to SSG because the risks of a spinal cord injury from using a mini-trampoline are not open and obvious and the warnings affixed to the mini-trampoline were inadequate.  For the reasons that follow, we affirm the decisions of the trial court.

BACKGROUND

Bryn Mawr elementary school (Bryn Mawr) is public school that is operated by the Board and located on Chicago's southeast side.  In response to community needs, the Board organized a gang and drug prevention program at Bryn Mawr.  As part of the program, an after-school tumbling program was started.  When the gang and drug prevention program ended in 1989, Bryn Mawr decided to continue the tumbling aspect of the program.

During the 1990-91 school year, the tumbling program was held after school and was supervised by Steve Yergovich, who was a physical education instructor at Bryn Mawr.  Sometime in 1991, the Board purchased two mini-trampolines for Bryn Mawr, which the school received in November or December of that year.  At the end of 1991, Bryn Mawr discontinued the after-school tumbling program.

In early 1992, Robert Lewis, the assistant principal at Bryn Mawr, spoke with an administrator of CYC.  The two discussed the availability of an employee from CYC to run a tumbling program during school hours.  Consequently, Collins, who was an employee of the CYC, became the supervisor of the new tumbling program at Bryn Mawr.

The tumbling program at Bryn Mawr was an extracurricular activity.  Students who elected to participate had to go through a tryout with Collins.  The students attended the tumbling program two days a week and each session lasted approximately 50 minutes.

On December 14, 1992, Ryan, who was an eighth-grade student at Bryn Mawr, sustained injuries resulting in quadriplegia while using a mini-trampoline during his regularly scheduled tumbling class at the school.  Collins was present and supervising the tumbling class when the accident occurred.

On the day in question, Murray performed several basic tumbling maneuvers during the more structured portion of the class.  Afterwards, while participating in the freelance portion of the class, Murray lined up to use one of the mini-trampolines.  He subsequently performed a jump off the mini-trampoline without incident.

However, Murray then took a running approach toward the mini-trampoline and from approximately six yards away bounced off the mini-trampoline, flipped twice in the air and landed on his chest in sort of a "belly flop."  Murray landed approximately 10 to 15 feet away from the mini-trampoline.  This fall caused his injuries.  At the time, Murray was not using any safety equipment and there was no spotter present to assist him.

The mini-trampoline that was used when Murray was injured was distributed by the defendant SSG.  Affixed on the front of the mini-trampoline is a red and white warning label.  On the label in bold block letters appears the word "CAUTION," followed by this statement: 

"Any activity involving motion or height creates the possibility of accidental injuries.  This equipment is intended for use ONLY by properly trained and qualified participants under supervised conditions.  Use without proper supervision, or abuse, could be DANGEROUS and should NOT be undertaken or permitted.  

Before using, KNOW YOUR OWN LIMITATIONS and the limitations of this equipment.  If in doubt, always consult your instructor.

Always inspect for loose fittings or damage and test stability before each use."

On May 19, 1998, the plaintiffs filed their initial suit.  Thereafter, on July 19, 1999, the plaintiffs filed an 11-count second amended complaint on behalf of Ryan Murray for his personal injuries and on behalf of Joyce Mayers under the Rights of Married Persons Act (750 ILCS 65/15 (West 1992)).  In their second amended complaint, the plaintiffs alleged that Collins and the CYC were willful and wanton in that they knowingly and intentionally or with reckless disregard acted in one or more of the following respects:

"a. Knowing trampolining was a hazardous recreational activity, failed to supply appropriate safety and protective equipment, including a harness, safety belt, and adequate landing mats to Ryan Murray when defendants knew or should have known participation in this activity created a substantial risk of spinal cord injury to any participant;

b. Failed to provide any instruction to Ryan Murray on how to perform a maneuver involving a somersault off of the trampoline before allowing him to perform a maneuver involving a somersault;

c. Failed to instruct Ryan Murray that he could not perform a maneuver involving a somersault without a spotter;

d. Allowed Ryan Murray to perform a somersault off the trampoline without a spotter;

e. Failed to evaluate Ryan Murray's individual ability, with reference to perform[ing] a maneuver involving a somersault, before allowing him to use a mini-trampoline to perform a somersault;

f. Did not guard Ryan Murray in any way from the danger of spinal cord injury while on the trampoline performing a somersault without a spotter when defendants knew or should have known of the substantial risk of harm created by allowing Ryan Murray to participate in this hazardous recreational activity;

g. Did not warn Ryan Murray of the danger of spinal cord injury or quadriplegia as he performed a somersault without a spotter on a mini-trampoline when defendants knew or should have known of the substantial risk of harm it created by allowing Ryan Murray to participate in this hazardous recreational activity;

h. Failed to guard Ryan Murray from the danger of spinal cord injury while using a trampoline to perform a somersault without proper protective gear, including a harness, safety belt, and adequate landing mats, when defendants knew or should have known of the substantial risk of harm it created by allowing Ryan Murray to participate in this hazardous recreational activity;

i. Defendants, who knew or should have known that Ryan Murray did not have knowledge of the substantial risk of spinal cord injury or quadriplegia associated with trampolining, failed to warn Ryan Murray of the risk of spinal cord injury if he used the trampoline to perform a somersault; and 

j. Aware that students were using the trampoline to perform a somersault unsafely, failed to stop class and prohibit further use of the trampoline."

Additionally, the plaintiffs alleged that the Board was willful and wanton in the following respects:

"a. Failed to supply a harness and safety belt to Ryan Murray, while doing a somersault with a mini-trampoline, when defendant knew or should have known of the danger of serious spinal injury associated with that activity;

b. Supplied gymnastic floor mats, not landing mats for trampolining, which were not adequate as a cushion to prevent serious spinal cord injury to Ryan Murray."

As to SSG, the plaintiffs alleged that Murray was injured due to SSG's failure to provide adequate warnings on the mini-trampoline.

On November 4, 2002, the trial court granted summary judgment to all defendants concerning each count of plaintiffs' second amended complaint.  The plaintiffs timely filed their notice of appeal on December 2, 2002.

ANALYSIS

I

We first address the issue of whether the trial court properly determined that the Board, Collins and CYC are afforded immunity under sections 3-108(a) and 2-201 of the Act.

Summary judgment is proper "where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 333 (1996); 735 ILCS 5/2-1005(c) (West 1996).  If the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opponent cannot rest on his pleadings to create a genuine issue of material fact.  
Purtill v. Hess
, 111 Ill. 2d 229, 240-41 (1986); 
Carruthers v. B.C. Christopher & Co.
, 57 Ill. 2d 376, 380 (1974); see also 
Fitzpatrick v. Human Rights Comm'n
, 267 Ill. App. 3d 386, 391 (1994).  Our review of an order granting summary judgment is 
de
 
novo
.  
Zekman v. Direct American Marketers, Inc.
, 182 Ill. 2d 359, 374 (1998).

The Tort Immunity Act governs whether and in what situations local governmental units such as the Board are immune from civil liability.  Here, we are called upon to interpret sections 3-108(a) and 2-201 of the Tort Immunity Act.  The principles to be applied in construing provisions of the Act are well established:

" '[O]ur primary goal is to ascertain and give effect to the intention of the legislature.  We seek the legislative intent primarily from the language used in the Tort Immunity Act.  We evaluate the Act as a whole; we construe each provision in connection with every other section.  [Citation.]  If we can ascertain the legislative intent from the plain language of the Act itself, that intent must prevail, and we will give it effect without resorting to other interpretive aids. [Citation.]  We must not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent.' "  
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 375-76 (1997), quoting 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 388-89 (1996).

The defendants assert that the trial court's decision to grant them summary judgment was proper.  The defendants argue that they were afforded immunity under both sections 3-108(a) and 2-201 of the Act.   

Section 3-108(a) of the Act states:

"
Except as otherwise provided by this Act
 and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property."  (Emphasis added.)  745 ILCS 10/3-108(a) (West 1992).

Section 2-201 of the Act states:

"
Except as otherwise provided by Statute
, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  (Emphasis added.)  745 ILCS 10/2-201 (West 1992).

Since Murray was injured while trampolining on public property, the defendants aver that their alleged failure to properly supervise the activity is absolutely immunized under section 3-108(a) of the Act.  Additionally, the defendants maintain that Collins' decision not to use a harness, safety belt or appropriate landing mats was a policy decision or an exercise of his discretion which is also afforded immunity under section 2-201 of the Act.  See 
Arteman v. Clinton Community Unit School District No. 15
, 198 Ill. 2d 475, 484-87 (2002).

In response, the plaintiffs contend that since trampolining is a hazardous activity as defined by section 3-109(b)(3) of the Act, the defendants are liable pursuant to section 3-109(c)(2) of the Act because their willful and wanton actions were the proximate cause of Murray's injury.  

Section 3-109(a) of the Act states:

"Neither a local public entity nor a public employee is liable to any person who participates in a hazardous recreational activity, including any person who assists the participant, or to any spectator who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury to himself or herself and was voluntarily in the place of risk, or having the ability to do so failed to leave, for any damage or injury to property or persons arising out of that hazardous recreational activity."  745 ILCS 10/3-109 (West 1992).

Section 3-109(b)(3) of the Act states:

"(b)  As used in this Section, 'hazardous recreational activity' means a recreational activity conducted on property of a local public entity which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator.

'Hazardous recreational activity' also means:

***

(3) ***, surfing, 
trampolining
, tree climbing, ***."  (Emphasis added.)  745 ILCS 10/3-109(b)(3)(West 1992).

Section 3-109(c)(2) of the Act states:

"(c)  Notwithstanding the provisions of subsection (a), this Section does not limit liability which would otherwise exist for any of the following:

***

(2)  An act of willful and wanton conduct by a public entity or a public employee which is a proximate cause of the injury."  745 ILCS 10/3-109(c)(2) (West 1992).

In 
Barnett v. Zion Park District
, 171 Ill. 2d 378 (1996)
, the Illinois Supreme Court visited the question of whether section 3-108(a) contains an exception for willful and wanton behavior.  In 
Barnett
, the plaintiff brought suit against a park district for the drowning death of her son in a park district swimming pool.  The plaintiff argued that section 3-108 of the Act does not establish unconditional immunity but, rather, provides an exception for willful and wanton misconduct.  In finding that section 3-108 provides immunity for willful and wanton misconduct, the 
Barnett
 court stated:

"The plain language of section 3-108 is unambiguous.  That provision does not contain an immunity exception for willful and wanton misconduct.  Where the legislature has chosen to limit an immunity to cover only negligence, it has unambiguously done so. See 745 ILCS 10/2-202, 2-210, 3-106, 
3-109(c)(2)
, 4-105, 5-103(b), 5-106 (West 1992).  Since the legislature omitted such a limitation from the plain language of section 3-108, then the legislature must have intended to immunize liability for both negligence and willful and wanton misconduct.  See [
West v. Kirkham
, 147 Ill. 2d 1, 6-7 (1992)]; 
Payne v. Lake Forest Community High School District 115
, 268 Ill. App. 3d 783, 785-87 (1994)."  (Emphasis added.) 
Barnett
, 171 Ill. 2d at 391-92.

Furthermore, the specific issue of whether section 3-109(c)(2) provides an exception to section 3-108(a) has been visited in 
Johnson v. Decatur Park District
, 301 Ill. App. 3d 798 (1998).  In 
Johnson
, a student and his parents sued the city park district, the coach of his tumbling team and the Young Women's Christian Association (YWCA) after the student sustained a broken neck while attempting a front flip from a mini-trampoline during team practice.  The student was taking a tumbling class at the YWCA.  The student was also a member of the Power Tumblers, a team that was run by the park district.  The mini-trampoline was also owned by the park district and the park district provided the coach of the team.  At the time of his injury, the student was practicing with the Power Tumblers at the YWCA.

The plaintiffs argued that the defendants were not afforded immunity under section 3-108(a) of the Act.  In particular, the plaintiffs argued that section 3-109(c)(2) provided an exception for willful and wanton behavior.  In disagreeing with this argument, the 
Johnson
 court stated:

"Plaintiffs argue that section 3-109(c)(2) of the Act is a limitation on the absolute immunity granted by section 3-108(a).  Their argument is that use of a mini trampoline is a hazardous recreational activity and that willful and wanton conduct is not immunized when it occurs in connection with such activities.  They cite no case so holding.  They argue that the plain language of section 3-109 compels this conclusion.

As stated, in this case, plaintiffs have alleged that the Park District failed to (a) provide a safety harness or belt, (b) warn of the dangers associated with using the mini trampoline and mats, (c) provide adequate spotters, (d) warn and instruct participants concerning the dangers associated with using a mini trampoline and mats and of the known serious risk of severe spinal cord injury, (e) properly position the mats to prevent gaps, and (f) provide a safe coach.  The gist of these allegations is that the Park District, through its employee, Park, failed to warn [plaintiff] of the dangers of spinal cord injury attendant to use of the mini trampoline and to adequately supervise activities performed on the mini trampoline given the dangers associated with its use.  Thus, section 3-108(a) applies to immunize this conduct.  Plaintiffs do not argue otherwise; they seek to avoid the immunity granted in that section by invoking section 3-109(c)(2) of the Act.

However, plaintiffs have misconstrued the import of section 3-109(c)(2) of the Act.  That subsection does not itself create an exception to the absolute immunity granted by section 3-108(a) of the Act.  It simply states that nothing in section 3-109(a) of the Act limits liability 'which would otherwise exist' for an act of willful and wanton conduct by a public entity or employee that is a proximate cause of injury.  Thus, if section 3-108 of the Act does not itself contain an exception for willful and wanton conduct in connection with supervisory activities, section 3-109(c)(2) of the Act does not apply to provide such an exception, simply because the activity involved may be a hazardous recreational activity.  Section 3-108(a) of the Act contains no such exception; its plain language provides immunity for supervisory activities, regardless of whether the conduct is merely negligent or willful and wanton.  We note section 3-109(c)(2) of the Act also provides that nothing in that section creates a duty of care or basis of liability for personal injury or damage to personal property.  We therefore reject plaintiffs' argument that section 3-109(c)(2) of the Act provides an exception to the absolute immunity granted by section 3-108(a) of the Act."  
Johnson
, 301 Ill. App. 3d at 807-08.

We disagree with the holding reached in 
Johnson
.  In our opinion, the 
Johnson
 court fails to sufficiently address the "Except as otherwise provided by this Act" language which appears in section 3-108(a).  In our view, 
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370 (1997), provides guidance with regard to situations where the immunity that is provided in certain sections of the Act, such as sections 3-108(a) and 2-201, is overridden due to other sections of the Act.

In 
Epstein
, the court was dealing with the issue of whether section 3-108(a) of the Act ever provides local governmental units with immunity from Structural Work Act claims.  In answering this question, the 
Epstein
 court noted that there were situations in which there were exceptions to the immunity provided in section 3-108(a).  
The 
Epstein
 court wrote:

"A further evaluation of section 3-108(a), along with the Tort Immunity Act as a whole, also supports our rejection of the plaintiff's argument.  Section 3- 108(a) grants immunity '
[e]xcept as otherwise provided by this Act
.' Ill. Rev. Stat. 1987, ch. 85, par. 3-108(a).  Accordingly, section 3-108(a) by its own terms provides that 
the only exceptions to its grant of immunity are those set forth elsewhere in the Tort Immunity Act
.  Our review of the entire Tort Immunity Act reveals that 
it provides exceptions for liability under the Workers' Compensation Act and the Workers' Occupational Diseases Act
 (Ill. Rev. Stat. 1987, ch. 85, pars.2-101(c), (d)), 
among other things
.  The Tort Immunity Act, however, nowhere makes an exception for liability under the Structural Work Act or for construction activities.  Nor does the Tort Immunity Act contain any provision limiting section 3-108(a)'s application to only recreational or scholastic activities.  Consequently, none of the asserted exceptions or limitations exist."  (Emphasis added.) 
Epstein
, 178 Ill. 2d at 377.

In our opinion, 
Epstein
 provides support for the conclusion that section 3-109(c)(2) provides an exemption to section 3-108(a) and furthermore to section 2-201, which contains similar exception language, for willful and wanton behavior with regards to hazardous activities.  Here, Murray was engaged in a hazardous activity as defined by section 3-109(b)(3) when he was injured.  Section, 3-109(c)(2) provides an exception to the immunity that is otherwise afforded under the Act, if a willful and wanton act by a public entity or employee is the proximate cause of an injury to a person engaged in a hazardous activity.  

We must reiterate, we evaluate the Act as a whole; we construe each provision in connection with every other section.  
Barnett
, 171 Ill. 2d at 388-89.  Section 3-108(a) provides immunity for a failure to supervise an activity on or the use of any public property.  745 ILCS 10/3-108(a) (West 1992).  The following section of the Act, section 3-109, provides immunity with relationship to any person who participates in a hazardous activity.  745 ILCS 10/3-109(a) (West 1992).  However, an individual who is participating in a hazardous activity can bring suit if the public entity or employee commits a willful and wanton act which proximately causes that person to be injured.

Consequently, in this particular situation, Murray can bring suit because section 3-109(c)(2) provides an exception to the immunity otherwise provided by the Act.  When a public entity or employee's willful or wanton misconduct proximately causes an injury to an individual participating in a hazardous activity, the Act does not provide immunity.  745 ILCS 10/3-109(c)(2) (West 1992).  We believe that the 
Johnson
 decision was erroneous because it fails to address the significance of the specific exception language found in section 3-108(a).

The plaintiffs maintain that the Board's failure to provide certain safety equipment, particularly a harness, a safety belt and appropriate landing mats, amounted to willful and wanton behavior for which the defendants are liable.

"While the question of whether a defendant's actions amount to willful and wanton misconduct is normally one of fact to be resolved by the jury, it may be determined by the trial court on a motion for summary judgment if the evidence meets the standard 

enunciated in 
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494 (1967), that is, if all of the evidence, when viewed in the aspect most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary determination based on that evidence could ever stand.  (
Breck v. Cortez
, 141 Ill. App. 3d 351 (1986).)"  
Urban v. Village of Lincolnshire
, 272 Ill. App. 3d 1087, 1094 (1995).

Here, the trial court's decision was correct because the defendant's alleged behavior was not willful and wanton.  The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-210 (West 1992).  Also, in 
Burke v. Rothschild's Liquor Mart, Inc.
, 148 Ill.2d 429, 448 (1992), our supreme court examined the use of the term "willful and wanton" in Illinois law, and reiterated its view that such conduct "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." 

In this case, the facts show that the defendants' actions do not approach the degree of blame worthiness necessary to maintain an action for willful and wanton behavior.  There were no previous accidents involving the mini-trampoline, none of the safety devices had been removed from the mini-trampoline, Collins had seen Ryan successfully perform a front flip on more than one occasion and Collins' failure to provide a spot for Ryan when he was performing the flip could amount to no more than negligent behavior.  

The plaintiffs' allegations do not support a finding that defendants intentionally caused plaintiff's injury.  Nor, in our view, do these allegations indicate that defendants were utterly indifferent to or consciously disregarded plaintiff's safety.  At worst, defendants' conduct amounted to negligence. 

II

The plaintiffs contend that the trial court's decision to grant SSG summary judgment was erroneous because SSG failed to adequately warn of the dangers associated with the use of a mini-trampoline.  In response, the defendants contend that the trial court's decision was proper because the risk of severe spinal cord injury from using a mini-trampoline is open and obvious.  

In 
Johnson
, the court was faced with this very question of whether the dangers associated with using a mini-trampoline were open and obvious.  The 
Johnson
 court stated:

"Although the [
Pell v. Victor J. Andrew High School
, 123 Ill. App. 3d 423 (1984),] case involved a manufacture's duty to warn, it does provide some insight into the special risks attendant to use of a mini trampoline, thus contradicting the [defendant's] open-and-obvious-danger argument.  The risks associated with use of a mini trampoline cannot be logically compared to the risks of falling from a height or activities such as diving.  Use of a mini trampoline requires a certain level of skill not found in use of the recreational equipment involved in the cases cited by the [defendant] or in the diving cases.  It is not an activity suited to every person.  Further, the Power Tumblers is [the defendant's] program that invites participation by highly skilled tumblers who perform for the public on behalf of the [defendant].  Thus, the [defendant] has assumed a greater responsibility here than did the defendants in the cases cited by the [defendant]."  
Johnson
, 301 Ill. App. 3d at 806.  

The plaintiffs also contend that Murray, who was 13 years old at the time of the accident, did not appreciate the dangers of using a mini-trampoline because of his age.  The plaintiffs maintain that Murray did not understand the ramifications of landing on his head or neck.  This argument, however, is nullified by a statement Murray made in a discovery deposition.  There, Murray stated that he understood that he could be hurt if he used the mini-trampoline and landed improperly.

The plaintiffs lastly argue that trial court erred when it granted summary judgment to SSG because the warnings on the mini-trampoline were inadequate.  In particular, the plaintiffs maintain that the caution which was affixed to the mini-trampoline was too small.  The plaintiffs also contend that the wording of the caution is inadequate.  The plaintiffs contend that the caution which is affixed to the mini-trampoline fails to say anything about the risk of spinal cord injury, paralysis, or death.  The plaintiffs also complain that the caution fails to state anything about using a spotter or a safety harness.

In 
Kane v. R.D. Werner Co., Inc.
, 275 Ill. App. 3d 1035 (1995)
, the plaintiff fell from a ladder.  He subsequently brought suit against the manufacturer claiming that the warnings on the ladder were inadequate.  However, the plaintiff never read the warnings that were affixed to the ladder.  The 
Kane
 court held that a plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it.  
Kane
, 275 Ill. App. 3d at 1037.  

Here, we find that the trial court's decision to grant summary judgment to SSG was proper.  The plaintiffs admit in their brief that Murray did not read the warnings.  As such, the plaintiffs' argument that the warning affixed to the mini-trampoline was inadequate must fail.  

Furthermore, the plaintiffs in this case cannot argue that the warning which was affixed to the mini-trampoline was inadequate due to its placement or size.  Here, the warning is an adequate size, appears in red and white and is affixed in plain view on the front of the mini-trampoline.  Accordingly, the trial court's decision to grant SSG's motion for summary judgment was proper.

CONCLUSION

For the foregoing reasons, the decisions of the trial court are affirmed.

Affirmed. 

Campbell, P.J. and Hartigan, J., concur.

FOOTNOTES
1:
This defendant was erroneously sued as BSN Sports, Inc., and GSC Sports.  Although this defendant is referred to as BSN Sports, Inc., and GSC Sports in the pleadings, it will be referred to as Sports Supply Group (SSG) in this opinion.