WHITE MARBLE LIME CO. *v.* CONSOLIDATED LUMBER CO.

1. SPECIFIC PERFORMANCE—ADEQUATE REMEDY AT LAW.
    On a bill for specific performance, where defendant breached its contract to furnish to plaintiff slabs and edgings cut into four-foot lengths so far as the production of its mill would enable it to do so, by contracting its product to another concern, plaintiff in reliance upon said contract having built a large and expensive plant, the finding of the court below that plaintiff's remedy at law is inadequate, *held*, correct.

2. SAME.
That defendant voluntarily contracted its product to plaintiff and another, both innocent parties, and placed itself in a position where it cannot fulfill both contracts, is no reason why the plaintiff, whose contract came first in point of time, should not have specific performance.

3. SAME.
*Held*, that the contract, when construed in the light of the circumstances existing at the time it was made, is not uncertain or ambiguous.

Appeal from Schoolcraft; Fead, J. Submitted February 6, 1919. (Docket No. 91.) Decided May 29, 1919. Rehearing denied July 18, 1919.

Bill by the White Marble Lime Company against the Consolidated Lumber Company and the Thomas Berry Chemical Company for the specific performance of a contract. From a decree granting partial relief only, plaintiff appeals. Modified and affirmed.

*Warner & Sullivan* and *William J. Morgan*, for plaintiff.

*A. E. Miller* and *E. A. Macdonald*, for defendant lumber company.

*Beaumont, Smith & Harris*, for defendant chemical company.

STONE, J. The bill of complaint herein was filed to compel the defendant Consolidated Lumber Company to perform a contract for the sale and delivery to the plaintiff of certain slabs and edgings, and to enjoin the sale of said slabs and edgings to any other party than the plaintiff, or the conversion by the said defendant of said slabs and edgings to its own use. From a decree granting partial relief only, plaintiff has appealed. Neither of the defendants has appealed.

In a general way the salient facts are as follows:

On August 7, 1889, the Chicago Lumbering Company, a Michigan corporation, was engaged in lumbering and operating sawmills at Manistique, Michigan, and owned a large part of what now constitutes the city of Manistique, including certain undeveloped limestone lands. In its sawmills it produced a large quantity of slabs and edgings which it used largely in building docks and for fuel, selling what it could, and had such a surplus that it was put to considerable expense in burning them, and it still had large quantities thereof on hand. Under these circumstances, in order to rid itself of the expense of disposing of its slabs and edgings, and to develop the said limestone lands and get lime for its own use in its building operations, and to help to build up the town in which it was largely financially interested, it entered into the contract of 1889, set forth in the bill of complaint, to which attention is called.

This contract was the reason for, and basis of, the organization of the plaintiff corporation. Pursuant to the plans and agreements of the parties, the Chicago Lumbering Company paid for half of the stock of the plaintiff, which was issued to the stockholders of the lumbering company *pro rata*, who in that way subsequently received their share of all the profits made by the plaintiff company. Relying upon this contract the plaintiff built a large and expensive plant at Manistique and has developed a large business. The plant was built upon land adjacent to the yards of the lumbering company, and a narrow-gauge railroad track was built for the purpose of conveying the slabs and edgings to the plaintiff's plant, and was used continually for that purpose until the defendant Consolidated Lumber Company refused to make further delivery. About August 6, 1902, the plaintiff purchased the land theretofore leased and a modification of the contract of 1889 was agreed to, which is also set forth

in the bill of complaint, and the relevant part of which is as follows:

"And the party of the first part hereby agrees to furnish to the party of the second part, slabs and edgings cut into four-foot lengths and delivered on cars or wagons to the premises of the party of the second part, in such quantities as the party of the second part may require for their lime kiln business at Manistique and Marblehead, to be taken directly from the mill so far as the production of their mill may enable them to do so, which said second party agrees to pay for at the rate of sixty-five (65) cents per cord delivered, reserving what wood the said first party may need for its own use."

In 1912, the Chicago Lumbering Company and the Weston Lumber Company made an agreement with W. S. Crowe and Louis Yalomstein by which the latter were to form a corporation, the evident purpose of which was to take over the business of such concerns for a consideration and under conditions therein named, among them being the assumption of the slab contract of 1902. In pursuance of such agreement the Consolidated Lumber Company was organized, in 1912, with Messrs. Crowe, Yalomstein and V. I. Hixon, their attorney, as stockholders, directors and officers. Formal transfers of the title to the real estate, and certain personal property were provided for in the agreement, and were duly made by the lumber companies to Crowe and Yalomstein, and by the latter to the Consolidated Lumber Company. On January 3, 1916, George H. Brusie, acting for himself and associates, entered into a contract with the Consolidated Lumber Company, and organized the Thomas Berry Chemical Company for the purpose of building a plant and operating under said contract. The contract was assigned to, and assumed by, the chemical company, and a plant constructed at large expense in reliance upon said contract; by which contract the lumber company agreed,

among other things, for a term of 15 years, with an option in the chemical company for renewal for ten years, "to sell and deliver to the chemical company at the boiler room of said chemical company, or at a bin to be built adjacent to said boiler room, hogged fuel, from its sawmill, sufficient to furnish steam and fuel required by the chemical company in its still house and retort plant, to be erected as hereinbefore stated, at 50 cents per cord; and to sell and deliver to the chemical company all of the mill wood suitable for retort wood, that said lumber company may produce in said sawmill, and that said chemical company may require in its business," at $3.00 per cord. The chemical company plant was completed, and began operations about November 1, 1916.

The plaintiff had no knowledge of the intention of the lumber company and the chemical company to make a contract, the enforcement of which would interfere with the lumber company's performance of its slab contract with the plaintiff; and it is claimed by the plaintiff that it had no reasonable ground for believing that the chemical company was about to enter into a contract that would interfere with the plaintiff's rights.

The Chicago Lumbering Company, in 1889, and until about 1908, was engaged principally in the cutting of soft wood. Thereafter, it cut hard wood in constantly increasing quantities as its supply of soft wood timber diminished, and, it having been conceded that plaintiff's contract, by reason of the practical construction of it by the parties, did not cover hardwood, the amount of slabs and edgings furnished plaintiff necessarily decreased with the decreasing production of the mill.

In 1913 the defendant lumber company installed improved machinery, which began effective operation in 1915, the result of which was to further reduce the

amount of slabs and edgings produced in the mill. The plaintiff concedes that it has no fault to find with the failure to furnish slabs due either to the diminishing supply of soft wood or the installation of this improved machinery.

It will be noted that the contract of 1916, between the defendants, calls for the furnishing of hogged fuel by the lumber company to the chemical company, "sufficient to furnish steam and fuel required by the chemical company in its still house and retort plant." In connection with this deal with the chemical company, the lumber company, in March or April, 1917, installed a new hog of large capacity, discontinued the burner and rearranged and extended its conveyor system to make more room for sorting out slab wood, short lumber and wood for lath, etc. This change in the conveyor system gave more room for picking out the slabs and edgings, and conveyed the material to the hog automatically; whereas, before the change, all material for the hog had to be handled by hand. The change made it possible to take more material from the conveyor. Since the change was made the defendant lumber company has been taking from the conveyor soft wood slabs for the manufacture of lath, heavy soft wood slabs, hardwood slabs for the manufacture of squares, hardwood slabs for mill wood and soft wood slabs for fuel.

It is plaintiff's contention that its contract calls for the delivery of (soft wood) slabs and edgings cut into four-foot lengths, in such quantities as it may require for its lime kiln business so far as the production of the lumber company's mill may enable it to do so, reserving what wood the lumber company may need for its own use.

Prior to the contract with the chemical company this reservation did not materially affect the delivery of soft wood slabs and edgings to plaintiff, but the

sale of hogged fuel to the chemical company has resulted in entirely cutting off plaintiff's supply of fuel under its contract with defendant lumber company, no slabs or edgings having been furnished plaintiff in 1917 or 1918.

It is claimed by defendant lumber company that its failure to furnish plaintiff slabs and edgings under its contract is due to the fact that they are needed for its own use for fuel, and, therefore, come within the express reservation of the contract.

Plaintiff's position, as stated in the opinion of the learned circuit judge, is as follows:

"As the defendant has the right to make proper changes in its method of operation, even to the plaintiff's detriment, it must be evident that the converse of the proposition is true, and the plaintiff is entitled to the benefit of any change which will decrease the amount of four-foot slabs which it is necessary to use for fuel. There has been no release by concession, or shown in the testimony, on the part of the plaintiff, of the hardwood product other than slabs and edgings. The plaintiff is entitled as against the defendant lumber company, to have all the hogged fuel applied by defendant to its own use before it may resort to the soft wood slabs and edgings."

The plaintiff claims to be so entitled as against both defendants.

Upon the hearing below the defendants claimed that plaintiff was not entitled to relief for the following reasons:

(1) That the contract was uncertain.

(2) That the contract was void for want of mutuality.

(3) That the plaintiff had an adequate remedy at law.

(4) That the contract was never assumed by the Consolidated Lumber Company.

(5) That the testimony failed to establish a breach of the contract.

(6) That a decree for specific performance would

be impracticable, because it would require continuous supervision of the court.

(7) That specific performance would be detrimental to the public interest.

(8) That specific performance is refused where the rights of innocent third parties have intervened.

The first six of these defenses were found against the defendants in the court below, and we are satisfied that such finding was supported by the evidence, and we agree with the circuit judge in the disposition of these questions.

It may be said that the question of public interest has been taken out of the case by the practical termination of the war, and so much of the record as refers to the orders of the war industries board may be disregarded.

Although the defendants have not appealed, it is their position that, although they are concluded by the decree as it stands, they are still permitted to question any decision of fact or law by the lower court which bears upon the question whether further relief should be granted; and with that end in view, to wit, to cut off any further relief, the claims of the defendants are argued at length by counsel in this court.

We fully agree with the court below upon the subject of adequate remedy at law, and approve of the following language in the opinion:

"That plaintiff's remedy at law is not adequate is plain. The limited nature and uncertainty of the market, the necessity for going into other markets where competition is keen for a supply, the inconvenience and labor of finding a supply, the disarrangement of plaintiff's business and calculations for the future, the impracticability of determining the damages accurately, and the multiplicity of suits which would be necessary to obtain recompense, render the situation one which cannot adequately be compensated at law. 16 Cyc. p. 41, *et seq.*"

Upon the subject of the remedy the circuit judge, among other things, said:

"It would, manifestly, require the constant supervision of the court for a long time to enforce a decree which would order the defendant lumber company, for the next eleven years, to saw into four-foot lengths and pile out, all the soft wood slabs and edgings capable of being so sawed. It is impossible to frame a decree which would determine the size in thickness of the slabs covered by the contract, or would specify the amount of slabs needed by the lumber company for fuel, or would determine in advance the method of manufacture which would be proper to be used in the mill.

"This difficulty in framing a decree which would cover all the rights of the plaintiff in the contract, prohibits full relief to it. In such case, the plaintiff is entitled to partial relief, if it so elects. A decree may be prepared by plaintiff along the following general lines, the details to be worked out and presented for settlement by counsel:

"1. The defendant lumber company be prohibited from selling or disposing of any soft wood slabs, other than four-foot, except such as it may convert into hogged fuel, or may itself use direct for fuel.

"2. It be prohibited from selling or disposing of hogged fuel except to the chemical company under its present contract, or to use as fuel in its own plant.

"3. It be prohibited from selling or disposing of its four-foot soft wood slabs and edgings, except for use by itself as fuel in its plant after exhausting its supply of hogged fuel, and soft wood slabs and edgings other than four-foot, and except in the manufacture of lumber and lath by itself.

"4. It be required to deliver to plaintiff under the contract all four-foot soft wood slabs and edgings, after providing for its manufacturing and fuel requirements as above.

"In case plaintiff shall not elect to accept such partial relief and present a decree for settlement within thirty days, a decree dismissing the bill may be presented by defendants."

A decree was finally settled and signed within the thirty days, from which plaintiff has appealed.

The questions of the continuing rights of the plaintiff and of the Thomas Berry Chemical Company, and the claim that plaintiff must be deprived of its rights because the rights of an innocent third party have intervened, should be considered. After a careful examination of this record, it appears to us that the defendant Thomas Berry Chemical Company has no superior equities which should deprive the plaintiff of its right to an enforcement of its contract. The defendant Consolidated Lumber Company having agreed to sell and deliver all its soft wood slabs and edgings to the plaintiff, if needed, so far as the production of the mill would enable it to do so, and reserving what wood the said defendant might need for its own use, after carrying out that contract for a time, found another and probably more profitable method of disposing of such slabs and edgings under its contract with the defendant Thomas Berry Chemical Company. The plaintiff's contract was first in time, therefore first in right.

The decree of the court below gives the chemical company paramount rights as against the plaintiff. In our opinion it has no such rights; its contract was subsequent to that of the plaintiff, and the plaintiff is entitled to have its contract performed independent of the contract with the chemical company, and as though that contract had never been made. It may be said that both the plaintiff and the chemical company are innocent parties, but that does not meet the question, or dispose of the right of the plaintiff to have its contract performed by the Consolidated Lumber Company. It appears that the defendant Consolidated Lumber Company has made two contracts, both of which it is obligated to perform, and both of which were made with innocent parties; that with the plain-

tiff being first in time. If the defendant Consolidated Lumber Company is not complying with both contracts, it is because it has placed itself voluntarily in that predicament, and there is no reason why the plaintiff should not have specific performance of its contract according to its spirit and letter. The contract, when construed in the light of the circumstances existing at the time it was made, is not uncertain or ambiguous. *Ardis* v. *Railway Co.*, 200 Mich. 400, 411.

The language of the contract with plaintiff provides that the defendant Consolidated Lumber Company shall furnish slabs and edgings so far as the production of its mill may enable it to do so; not so far as its other subsequent fuel contracts may enable it to do so. It is urged by plaintiff, and we think rightfully, that the production of the lumber company's mill would enable it to furnish the plaintiff practically all of the soft wood slabs and edgings it produced, were it not for the requirements and demands of the Thomas Berry Chemical Company. We approve of the following language of the circuit judge in his opinion:

"The contract renders plain the obligation of the defendant to dispose of no soft wood slabs or edgings except for the benefit of the plaintiff. The defendant is obligated to use the soft wood slabs, other than four-foot, for its own fuel purposes before resorting to the four-foot slabs. And it has no right to sell or dispose of them elsewhere, if, by so doing, it would necessitate the use of four-foot slabs for fuel. The defendant is bound to furnish four-foot slabs and edgings to plaintiff as far as the production of the mill will permit, which requires the use of other waste first."

The objections to the specific performance of this contract, as now asked for by the plaintiff, are, in our opinion, theoretical rather than practical. An amendment of the decree appealed from, substantially as in-

dicated by the plaintiff, would not require the supervision of the court, would protect the rights of the plaintiff under the contract, and would be doing substantial justice by carrying out the intention of the parties.

There is no evidence in this record that the defendant Consolidated Lumber Company is not financially responsible and able to respond in damages to the chemical company if the former has breached, or shall breach, its contract with that company. In its contract with the chemical company it does not reserve to itself the right to use any material that it might need for its own use. If there must be loss or damage, equity requires that it should fall upon the party responsible for the condition which makes the loss inevitable. In our opinion the equities of the case are with the plaintiff.

The decree below will be modified in accordance with this opinion, and as so modified will be affirmed, with costs to the plaintiff against the defendant Consolidated Lumber Company.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.