S & S Chopper Service, Inc., Appellee, *v.* Scripter, Appellant.

(No. F-76-9—Decided September 16, 1977.)

*The McQuades Co., L. P. A.,* for appellee.
*Messrs. Jan & Jan,* for appellant.

Brown, J. Plaintiff-appellee, S & S Chopper Service, Inc., incorporated in Michigan, is engaged in the business of applying agricultural chemicals by helicopter in several states, including Ohio, Michigan and Indiana. Defendant-appellant, Marvin Scripter, has since 1972 operated a helicopter spray service based principally in Florida. In 1974 and 1975, pursuant to written agreements initiated by S & S, Scripter performed helicopter spraying services for S & S. In 1976, Scripter did not renew his employment agreements with S & S, but instead commenced agricultural spraying in northwestern Ohio under his own sole proprietorship, Sunline Aviation, based in Delta, Ohio. In the 1976 season, Scripter performed agricultural spraying for four former Ohio customers of S & S.

S & S brought suit in the Fulton County Common Pleas Court to enforce performance of clauses in two agreements signed by Scripter covering the 1975 spraying season, whereby Scripter agreed not to compete in servicing any of S & S's customers for a period of five years from the termination of those agreements. Following a non-jury trial, a judgment was rendered for S & S, enjoining Scripter from performing crop spraying sevices for any customer or former customer of S & S in the Ohio counties of Fulton, Williams, and Henry until March 1980; ordering Scripter to deliver to S & S any lists of its customers in his possession; and ordering Scripter to pay to S & S $1,305.75, plus costs, representing the monies which Scripter received for performing services for S & S's former customers during 1976. Defendant appealed the Common Pleas judgment assigning six errors.

The pivotal issue of this case was which state law governs the contractual rights of the parties: the law of Michigan, where appellee was incorporated and where appellee drafted and signed the agreements; the law of Florida, where appellant resides and where he signed the agreements and mailed them back to appellee; or the law of Ohio, which appellee chose as its forum, where substantial performance of the spraying services occurred and where appellant's competing business is located. The choice is crucial because pursuant to Michigan law covenants not to compete are void as against public policy (Michigan Compiled Laws Annotated, Section 445.761), whereas pursuant to Florida and Ohio law covenants not to compete are enforceable if reasonable (Florida Statutes Annotated, Section 542.12; *Raimonde* v. *Van Vlerah* (1975), 42 Ohio St. 2d 21).

The court below ruled that "The state of Ohio, as the place of performance, has the most significant relationship to the transaction and the parties, to the exclusion of the states of Florida and Michigan, and, the parties having stated no choice in the contracts, the law of Ohio governs all matters before the Court. *Restatement (Second) Conflict of Laws* No. 188." The Ohio courts have followed three choice of law rules to determine which law to apply: the

place of making rule, the place of performance rule, and the intention of the parties rule. 9 Ohio Jurisprudence 2d 729, Conflict of Laws, Section 61, *et seq.* The lower court's ruling is in accord with those Ohio decisions following the place of performance rule. *See, Kanaga* v. *Taylor* (1857), 7 Ohio St. 134; *Pittsburg, C., C. & St. Louis Ry. Co.* v. *Sheppard* (1897), 56 Ohio St. 68; *Montana Coal & Coke Co.* v. *Cincinnati Coal & Coke Co.* (1904), 69 Ohio St. 351.

Appellant alleges that the court below erred by ignoring the full impact of Section 188 of the Restatement and relying on only one sentence of one paragraph in that Section in ruling that Ohio law applied. Restatement of Conflicts of Laws 2d 575, Section 188 (1971) reads in pertinent part:

"(2) In the absence of an effective choice of law by the parties (see §187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

We find no indication that the court below failed to evaluate all the contacts cited in Section 188 and to evaluate them according to their relative importance. Therefore, this assignment of error is not well taken.

Appellant further alleges that the court below erred in ruling that the agreements offered in evidence were valid contracts, since there was no consideration recited for the clauses embodying the covenants not to compete and since one instrument had been altered after he signed it.

The two agreements in evidence were a helicopter lease agreement and a pilot agreement, both covering the 1975 spraying season. Both agreements specified a pay rate for

spraying purposes. There being no indication that the contracts were divisible, this recited consideration applies to all .items in the agreements, including the covenants not to compete. Moreover, although there are two apparent alterations in the helicopter lease agreement, there is no indication that these changes materially altered the agreement, thereby invalidating it. These assignments of error are not well taken.

Appellant alleges error in the admission of the testimony of witness Stroud, a shareholder, director, and officer of S & S, relative to the identity of the signature of his business associate, Bernard Swindeman, the activities of the corporation's board of directors, and the contents of the agreements and certain financial statements. Appellant's objection goes to the credibility, not the admissibility of the testimony. This assignment of error is not well taken. ; ··

Appellant alleges that the court erred in ruling that the parties contemplated that most of the services mentioned in the contracts would be furnished in Ohio. There is no direct testimony in the record as to what areas the parties contemplated servicing when they signed the agreements at issue, covering the *1975* season. However, appellant testified that in 1974 the majority of spraying he performed for appellee was in Ohio. He further testified that the 1974 agreements and the 1975 agreements were essentially the same. So it may be inferred that the parties contemplated that appellant would in 1975 again perform the major portion of his spraying in Ohio. Appellant's testimony indicates that this is indeed what happened. The lower court did not err in inferring from the evidence that the parties intended appellant to perform most of his services during the 1975 season in Ohio.

Finally, appellant alleges that the court erred in ruling that appellee, a foreign corporation, was operating legally in Ohio. This assignment of error misconstrues the lower court's ruling. The court below did not rule that appellee was operating legally in Ohio, but rather that appellee was licensed in Ohio, a fact admitted in the pleadings and corroborated in the testimony. Had appellant

wished to challenge the validity of appellee's license to do business in Ohio and therefore its capacity to sue in this state, he should have raised the issue in the pleadings by specific negative averment. See Civ. R. 9(A), 12 (H).

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Fulton County Common Pleas Court is affirmed.

*Judgment affirmed.*

POTTER, P. J., and CONNORS, J., concur.