In re The **ELDER–BEERMAN STORES CORP.**, an Ohio Corporation, et al., Debtors.

**BRIGGS ELECTRICAL CONTRACTING SERVICES, INC.**, Plaintiff,

v.

The **ELDER–BEERMAN STORES CORP.**; Allen County Electric, Inc.; Consolidated Electrical Distributors, Inc.; Northwestern Ohio Security Systems, Inc.; Fifth Third Bank; et al., Defendants.

Bankruptcy No. 95–33643.
Adversary No. 97–3046.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

May 21, 1998.

James M. Perlman, Hunter & Schank, Co., L.P.A., Toledo, OH, for Allen County Electric, Inc.

Harry J. Knudsen, Knudsen, Wasiura & Associates, P.C., Muskegon, MI, Special Counsel for James W. Hoerner, Trustee in Bankruptcy for Briggs Electrical Contracting Services, Inc.

Arnold E. Shaheen, Jr., Pataskala, OH, for Consolidated Electrical Distributors, Inc.

Richard Chesley and Shawn Organ, Jones, Day, Reavis & Pogue, Chicago, IL, for The Elder–Beerman Stores Corporation.

Alan J. Statman and John Schmidt, Reisenfeld & Statman, Cincinnati, OH, for Fifth Third Bank of Western Ohio.

Clay W. Balyeat and William Balyeat, Daley, Balyeat, Balyeat & Leahy, Lima, OH, for Northwest Ohio Security Systems.

## DECISION AND ORDER

WILLIAM A. CLARK, Chief Judge.

I. GRANTING MOTIONS FOR PARTIAL SUMMARY JUDGMENT OF CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC. AND BRIGGS ELECTRICAL CONTRACTING SERVICES, INC.; AND

II. DENYING MOTION FOR SUMMARY JUDGMENT OF FIFTH THIRD BANK OF WESTERN OHIO

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) & 1334, and the standing General Order of Reference in this District. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K) & (O) (1994). The following Decision and Order constitutes the court's findings in accordance with Federal Rule of Bankruptcy Procedure 7052(a).

This matter is before the court on the following pleadings: the Motion for Partial Summary Judgment [Doc. # 39–1] of Consolidated Electrical Distributors, Inc.(hereinafter "Consolidated Electrical"); the Motion for Summary Judgment [Doc. # 40–1] of Fifth Third Bank of Western Ohio (hereinafter "Fifth Third Bank"); the Motion for Partial Summary Judgment [Doc. # 41–1] of Briggs Electrical Contracting Services, Inc. (hereinafter "Briggs Electrical"); the Reply of Briggs [Doc. # 50–1]; the Response Brief of Fifth Third Bank [Doc. # 52–1]; and Consolidated Electrical's Memorandum Contra the Motion for Partial Summary Judgment of Fifth Third Bank [Doc. # 53–1].

In considering the dispute *sub judice*, the court has reviewed the various complaints and answers which underlie these motions for summary judgment: the Complaint in Adversary Proceeding [Doc. # 1–1], First Amended Complaint [Doc. # 9–1], and Answer and Counterclaim [Doc. # 16–1] of Briggs Electrical; the Answer and Counterclaim and Cross–Claims in Interpleader [Docs. # 13–1 and # 13–2] of the Elder–Beerman Stores Corporation (hereinafter "Elder–Beerman"); the Answer [Doc. # 7–1] and Answer and Crossclaim [Doc. # 18–1] of Consolidated Electrical; and Fifth Third Bank's Answer [Doc. # 8–1], Answer to Counterclaims and Cross–Claim in Interpleader [Doc. # 19–1], and Answer to First Amended Complaint [Doc. # 20–1].

The court has also considered the Preliminary Pretrial Statements of the parties, Briggs Electrical [Doc. # 26–1]; Elder–Beerman [Doc. # 24–1]; Allen County Electric, Inc. [Doc. # 28–1]; Consolidated Electrical [Doc. # 22–1]; Northwestern Ohio Security Systems, Inc. [Doc. # 23–1]; and Fifth Third Bank [Docs. # 25–1 and # 30–1], respectively. In addition, the court has reviewed the Brief of Threshold Issues of Briggs Electrical [Doc. # 42–1].

On April 3, 1998 at 9:30 a.m., the court conducted a telephone conference on this matter. During that conference, the parties agreed to forgo oral argument on their respective motions for summary judgment. At the close of the conference, the court took the matter under advisement.

After careful consideration of the parties' pleadings and an independent examination of the legal principles in question, the court is now prepared to issue its decision in this matter.

## FINDINGS OF FACT

Though the facts are essentially undisputed in this matter, in order for the court to properly consider the respective parties' motions for full or partial summary judgment, it is necessary for the court to examine transactions which led to the parties' current positions.

On June 14, 1995, the Elder–Beerman Stores Corporation ("Elder–Beerman"), Debtor in Possession and Reorganized Debtor in the Chapter 11 bankruptcy case out of which this adversary proceeding arises, entered into a construction agreement (the "Agreement") with Allen County Electric, Inc. ("Allen County"). Elder–Beerman and Allen County are both Ohio corporations with their principal places of business in Ohio.

The subject of the June 14, 1995 Agreement was Elder–Beerman's leased commercial space in Muskegon County, Michigan. The Muskegon store is leased by Elder–Beerman from Horizon/Glen Outlet Centers Limited Partnership. The purpose of the Agreement was to provide electrical work on the interior shell of the store, and called for Allen County to provide both materials and labor for the Muskegon project. The parties agree that the Agreement did not contain a choice of law provision.[1]

In completing the project, Allen County subcontracted the labor to Briggs Electrical, a Michigan corporation with its principal place of business in Michigan. Materials for the project were provided through Allen County by Consolidated Electrical Distributors, Inc. ("Consolidated Electrical"), and Northwestern Ohio Security Systems, Inc. (hereinafter "Northwestern Ohio Security"). Consolidated Electrical is a corporation with offices in Wisconsin and doing business in Ohio. Northwestern Security is a corporation doing business in Ohio.

On August 29, 1995, Allen County entered into a financing agreement between it and Fifth Third Bank of Western Ohio ("Fifth Third Bank"), granting Fifth Third Bank a security interest in Allen County's accounts and accounts receivable. Fifth Third Bank apparently properly perfected this interest under Ohio law.

On October 10, 1995, Briggs Electrical completed work on the Muskegon project, and submitted its invoice for services performed. When complete payment for services rendered was not forthcoming, Briggs Electrical, Consolidated Electrical, and Northwestern Ohio Security each apparently filed and perfected mechanic's liens against the Michigan store.

On October 17, 1995, Elder–Beerman and certain of its subsidiaries filed voluntary petitions for protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in this court. On November 4, 1996, Allen County filed for Chapter 11 protection in the Northern District of Ohio bankruptcy court (Case No. 96–33724). That case was subsequently dismissed without prejudice on February 19, 1998.

## CONCLUSIONS OF LAW

The matter before the court consists of three respective motions for summary judgment or partial summary judgment in this adversary proceeding. The Supreme Court has determined that a movant will prevail in a summary judgment proceeding if the

---

1. The court professes some confusion as to why the parties feel no choice of law provision was entered into in the Agreement. The Affidavit of Jeffrey W. Brown, attached as Exhibit 1 to the Motion for Partial Summary Judgment of Consolidated Electrical Distributors, Inc. [Doc. # 39–1], states that the Agreement entered into between Elder–Beerman and Allen County "included as one of its component parts, the General Conditions of the Contract for Construction, AIA Document A201." See Article 9.1.2 of the Agreement (incorporating Document A201 to the Agreement). Even the most cursory examination of the Document, attached as Exhibit B to Mr.

Brown's Affidavit reveals that Article 13.1.1 of the Document states: "The Contract shall be governed by the law of the place where the Project is located." Nothing in the amendments to this Document deletes this provision. See, e.g., Part 1.02(C) of the amendments to the Document.

Though the parties have failed to address the importance of this provision, and it would appear that this provision should govern, as the result of applying this provision is the same result as is reached by the court's analysis herein, the court will address the parties' pleadings on their face value alone.

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). In order to prevail, the movant must demonstrate all elements of the cause of action for which summary judgment is sought. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). In addition, the moving party bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device, etc.,* 527 F.2d 1008, 1011 (6th Cir.1976). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962).

The parties are in agreement as to the facts necessary to determine the initial legal issues. It falls on the court, therefore, to determine whether as a matter of law, any of the moving parties is entitled to summary judgment. In order to make such a determination, the court must first address the question of which state's law will govern this dispute.

## CHOICE OF LAW

■ In order to determine the relative rights to payment of the parties, it is necessary for the court to determine what state's law will govern this dispute. Had the parties provided a choice of law provision in the Agreement, this court would be obligated to apply the law chosen therein. *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 468–69, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). As the parties agree that no such provision exists, however, the question of whose law governs this dispute has become an important

issue. Determining choice of law questions is a two-step process. First, the court must determine what forum's law to look to to find choice of law rules. Second, the court must determine what law is required to be applied by those rules.

Fifth Third Bank mistakenly assumes that a federal court is required to apply choice of law rules from the state in which the court resides. In support of this proposition, Fifth Third cites to the United States Supreme Court and a district court in another jurisdiction. *See Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996); *Messinger v. United Canso Oil & Gas, Ltd.,* 486 F.Supp. 788 (D.Conn.1980).

The *Zicherman* case stands only for the proposition that cases brought under Article 17 of the Warsaw Convention require the forum country's courts to apply their domestic law. *Zicherman,* 516 U.S. at 225, 116 S.Ct. 629. The court in *Messinger,* on the other hand, applied well-established Supreme Court precedent that in diversity cases, *see* 28 U.S.C. § 1332(a)(3) (1994), a federal court must apply the conflict of laws rules of the state in which it sits. *Messinger,* 486 F.Supp. at 789 n. 1 (relying on *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Such a proposition is uncontroversial, and has been addressed by the Sixth Circuit in *Security Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.,* 64 F.3d 1001, 1005 (6th Cir.1995).

■ These cases are not applicable, however, in determining what choice of law rules should be applied in a federal court which sits as a matter of federal question jurisdiction. *See* 28 U.S.C. § 1331 (1994); *Lindsay v. Beneficial Reinsurance Co. (In re Lindsay),* 59 F.3d 942, 948 (9th Cir.1995), *cert. denied,* 516 U.S. 1074, 116 S.Ct. 778, 133 L.Ed.2d 730 (1996). As the Ninth Circuit stated in *Lindsay,* "[t]he rule in diversity cases, that federal courts must apply the conflict of laws principles of the forum state, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), does not apply to federal question cases such as bankruptcy." *Lindsay,* 59 F.3d at 948; *see Woods–Tucker Leasing Corp. v. Hutcheson–Ingram Dev. Co.,* 642

F.2d 744, 747–49 (5th Cir.1981); *In re SMEC, Inc.,* 160 B.R. 86, 89–90 (M.D.Tenn. 1993). The *Lindsay* court went on to state that:

> In federal question cases with exclusive jurisdiction in federal court, such as bankruptcy, the court should apply federal, not forum state, choice of law rules. In such cases, the risk of forum shopping which is avoided by applying state law has no application, because the case can only be litigated in federal court. The value of national uniformity of approach need not be subordinated, therefore, to differences in state choice of law rules.

*Id.* (citations omitted).

Though there is Sixth Circuit precedent on this question under the Bankruptcy Act, this precedent is of questionable use under the Bankruptcy Code, and predates Supreme Court decisions which would seem to require federal choice of law principles be applied. *In re SMEC, Inc.,* 160 B.R. at 89–90 (discussing *United Constr. Co. v. Milam,* 124 F.2d 670, 671 (6th Cir.1942) and *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946)). This court is in agreement with the District Court for the Middle District of Tennessee, therefore, that federal rules will apply to this situation. *In re SMEC, Inc.,* 160 B.R. at 90–91.

■ Having decided that federal choice of law rules will apply to this dispute, the court must determine which forum's law will be required by those rules to be applied to the situation at hand. The *Lindsay* case discussed above, while providing an in-depth analysis as to why federal choice of law rules apply, fails to explain the basis for its final conclusion as to the final choice made therein. *Lindsay,* 59 F.3d at 948–49. The Second Circuit addressed the differing results when applying federal choice of law rules in *Pescatore v. Pan American World Airways, Inc.,* 97 F.3d 1 (2d Cir.1996). In *Pescatore,* the court stated that:

> Jurisdiction in this case was predicated on the federal question.... The "forum jurisdiction" is therefore federal court. In cases arising under other federal statutes, we have applied a "federal common law choice of law rule." In the absence of Congressional guidance, we have from time to time consulted the Restatement (Second) of Conflict of Laws (1971) in fashioning that federal rule. Other circuits have also consulted the Restatement. But in other circumstances, courts have used the choice of law rules of the state in which the court sits instead of a federal common law choice of law rule.

*Pescatore,* 97 F.3d at 12.

One circumstance where a bankruptcy court applying federal choice of law rules will choose to defer to state rules is where the case, while heard in a case arising out of federal question jurisdiction, could have been heard independently in a state court forum and is not reliant on federal bankruptcy law principles. *Woods–Tucker,* 642 F.2d at 747–49. In such cases, the court makes a determination of which state's choice of law provisions should apply based upon "the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states." *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *In re SMEC, Inc.,* 160 B.R. at 91 (following *Vanston* and applying a "most significant contacts test"). Not surprisingly, this balancing of interests has been utilized in both Ohio and Michigan cases. *See, e.g., Chrysler Corp. v. Skyline Indus. Services, Inc.,* 448 Mich. 113, 124, 528 N.W.2d 698, 703 (Mich. Sup.Ct.1995). While Michigan courts routinely apply the rule, "Ohio courts have followed three choice of law rules to determine which law to apply: the place of making rule, the place of performance rule, and the intention of the parties rule." *S & S Chopper Service, Inc. v. Scripter,* 59 Ohio App.2d 311, 312–13, 394 N.E.2d 1011, 1012–13 (Ohio Ct. App.1977). In particular, the Ohio Supreme Court has set forth a rule that the performance rule is to be given precedence. *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.,* 6 Ohio St.3d 436, 438, 453 N.E.2d 683, 685–86 (Ohio Sup.Ct.1983). ("Ohio follows the rule that where a conflict of law issue arises in a case involving a contract, the

law of the state where the contract is to be performed governs.").

Finally, while Fifth Third attempts to characterize the choice of law question as solely a matter of accounts receivable law, the court finds that the nature of this contract cannot be separated from the question of whose law governs. Under Fifth Third's theory, the court need not consider that the obligations in question arise from a construction contract, and need only consider the question of accounts receivable in a vacuum. While the court is in general agreement with the authority cited by Fifth Third that choice of law decisions are dependent on what law is being applied, *see Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608 (9th Cir.1975); *Fahs v. Martin*, 224 F.2d 387 (5th Cir.1955), the court notes that the *Forsyth* case is predicated on the diversity-based forum selection rules which are inapplicable here, and the *Fahs* case actually stands for the proposition that in federal question cases, characterization should be based on the criteria in *Vanston. Forsyth*, 520 F.2d at 610–11; *Fahs*, 224 F.2d at 394–97.

Here the parties contracted for work to be done in Michigan, and more importantly, on property located in Michigan. Under such circumstances, even Ohio law dictates that the locus of the property governs. *Schulke Radio Prods.*, 6 Ohio St.3d at 438, 453 N.E.2d at 685–86. While the nature of the dispute can be considered either as a matter of contract law or secured transactions law, it is necessary first to look to the locus of the contract, and then if necessary to choose the specific area of law within that forum. It is therefore this court's conclusion that "the most significant contact" in this Agreement is with the State of Michigan, and that Michigan law should be applied. *See, e.g., Vanston*, 329 U.S. at 161, 67 S.Ct. 237.

## THE NATURE OF THE INTERESTS

■ The importance of the choice of law becomes clear when the relative interests of the parties are considered. Fifth Third argues that its interest in Allen County's accounts receivable is superior to any rights of the subcontractors of payment for work performed. This question implicates both the law of secured transactions and construction contracts.

As noted earlier, Fifth Third argues that the applicable law should be that of secured transactions under the Uniform Commercial Code (the "U.C.C."). Both Ohio and Michigan have adopted Article 9 of the U.C.C., the Article which governs secured transactions. Article 9–106 defines "account" to mean "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." Mich.Comp.Laws Ann. § 440.9106 (West 1998); Ohio Rev.Code Ann. § 1309.01(a)(15) (Baldwin 1998). As such, the amount owed by Elder–Beerman to Allen County for work performed under the construction Agreement would be considered an account or account receivable for the purposes of determining Fifth Third's interest. Because Fifth Third's security interest in Allen County's accounts and accounts receivable was apparently perfected before the mechanics' liens, absent any other controlling law, Fifth Third's interest would take precedence under traditional notions of "first in time, first in right." *United State v. Darnell (In re Darnell)*, 834 F.2d 1263, 1266 (6th Cir.1987) (citing *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954)); *White Marble Lime Co. v. Consolidated Lumber Co.*, 205 Mich. 634, 643–44, 172 N.W. 603, 606 (Mich.Sup.Ct.1919); *Elstner v. Fife*, 32 Ohio St. 358, 373 (Ohio Sup.Ct.1877).

Michigan laws provide for special protection for the rights of the construction industry and subcontractors, however, under the Michigan Building Fund Act, Mich.Comp. Laws Ann. §§ 570.151, *et seq.*, and the Michigan Construction Lien Act. Mich.Comp.Laws Ann. §§ 570.1101, *et seq.* The Michigan Building Fund Act provides that:

In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act *to be a trust fund,* for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered

the trustee of all funds so paid to him for building construction purposes.

Mich.Comp.Laws Ann. §§ 570.151 (emphasis added).

In addition, the Michigan Construction Lien Act provides that "[e]ach contractor, subcontractor, supplier, or laborer who provides an improvement to real property shall have a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property...." Mich. Comp.Laws Ann. §§ 570.1107(1). While the liens arising out of the Construction Lien Act would be subject to the traditional first in time, first in right analysis, *see, e.g., Redford Lumber Co. v. Knight,* 242 Mich. 695, 697, 219 N.W. 686, 687 (Mich.Sup.Ct.1928) ("Everybody taking a conveyance of, or a lien upon, land, takes it with constructive notice of whatever appears in the conveyances which constitute his chain of title."), and therefore subordinate to Fifth Third Bank's interest, the statutory trust is a different matter.

The Sixth Circuit considered the relative priorities under the Bankruptcy Act of interests arising out of Michigan's Building Fund Act in *Selby v. Ford Motor Co.,* 590 F.2d 642 (6th Cir.1979); *see also Huizinga v. United States,* 68 F.3d 139, 145 (6th Cir.1995) (applying *Selby* rationale under the Bankruptcy Code to Building Fund Act trust).

In *Selby,* the court held that:

Conceptually, the Michigan builders trust fund statute can be viewed in any one of three ways: (1) as imposing a traditional trust on the contractor's funds for the benefit of subcontractors, laborers and materialmen; or (2) as creating a security arrangement in the nature of a statutory lien; or (3) as creating no security or other interest recognizable under the Bankruptcy Act.

*Selby,* 590 F.2d at 645. The court reasoned that when viewed "as a traditional trust, the beneficial interests in the trust fund would not be the 'property' of the bankrupt contractor or his estate in bankruptcy." *Id.* After discussing the alternatives, the court concluded that the treatment of such funds as a trust was consistent with the intent of the Michigan statute and the controlling case

law. *Id.* at 646–47. As the court stated, "federal bankruptcy law should recognize and enforce the property rights created by state law under the Michigan statutory trust." *Id.* at 647.

The analysis by the Sixth Circuit is consistent with the holding of Michigan courts that funds owed a contractor as trustee under the Michigan's Building Fund Act are not subject to appropriation for other claims. *See, e.g., National Bank of Detroit v. Eames & Brown,* 396 Mich. 611, 621, 242 N.W.2d 412, 417 (Mich.Sup.Ct.1976) ("The contractor or subcontractor cannot defeat the purpose of the Act by granting a security interest in those funds held in trust for the materialmen's benefit."); *B.F. Farnell Co. v. Monahan,* 377 Mich. 552, 557, 141 N.W.2d 58, 61 (Mich.Sup.Ct.1966) (same); *Blair v. Trafco Prods., Inc.,* 142 Mich.App. 349, 354, 369 N.W.2d 900, 903 (Mich.Ct.App.1985) ("[M]oney held in an account by a contractor as trustee pursuant to the act is not property of the contractor subject to setoff by the contractor's bank-lender.").

It is therefore the conclusion of the court that the funds in question owed by Elder–Beerman to Allen County are subject to Michigan's Building Fund Act, to be held in trust for the benefit of the subcontractors of the Muskegon project. These funds are not, therefore, subject to the security interest of Fifth Third, except if and to the extent such amounts owed exceed the claims of the contractors.

## CONCLUSION

It is therefore the court's conclusion that both federal and state choice of law rules require the application of Michigan law, as location of the work to be performed and the property in Michigan is the "the most significant contact" in this Agreement. *See, e.g., Vanston,* 329 U.S. at 161, 67 S.Ct. 237. It is also the conclusion of the court that under Michigan's Building Fund Act and the Sixth Circuit precedent in *Selby v. Ford Motor Co.,* the funds by owed by Elder–Beerman to Allen County are held in trust for the benefit of the Muskegon project subcontractors' liens, the relative priority of which is to be

determined later. If the amount of the funds owed by Elder–Beerman to Allen County exceeds the allowable amounts of such liens, the remainder, if any, owed by Elder–Beerman to Allen County will be subject to the security interest of Fifth Third Bank.

For the foregoing reasons, it is the court's conclusion that the Motion for Partial Summary Judgment [Doc. # 39–1] of Consolidated Electrical Distributors, Inc. and the Motion for Partial Summary Judgment [Doc. # 41–1] of Briggs Electrical Contracting Services, Inc. should be, and hereby are, GRANTED, and the Motion for Summary Judgment [Doc. # 40–1] of Fifth Third Bank of Western Ohio should be, and hereby is, DENIED in accordance with this Decision and Order.

It is so ORDERED.