**In re WALLACE'S BOOKSTORES, INC., Debtor.**

**No. 01–50545.**

United States Bankruptcy Court,
E.D. Kentucky,
Lexington Division.

May 25, 2004.

Barbara B. Edelman, Dinsmore & Shohl LLP, Lexington, KY, Donald W. Mallory, Dinsmore & Shohl LLP, Cincinnati, OH, Scott D. Cousins, Wilmington, DE, for Debtor.

## MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

### I. Introduction

Bernard Katz as liquidating supervisor (the "Liquidating Supervisor") is before the court on the Motion for Estimation of Thomas–Related Claims Pursuant to Provision 7.4 of the Plan that he filed in the above-styled case on January 29, 2004. The court has sustained the motion and established a procedure for the estimation of the claims. The parties have asked the court to resolve two legal issues early in the process to narrow the scope of the questions to be decided in estimating the claims. Those issues are (1) whether comparative fault is available as a partial defense to intentional tort claims, and (2) whether the claimants have asserted facts sufficient to state a claim for relief under the Racketeer Influenced and Corrupt Practices Act ("RICO"). Having considered the parties' briefs, oral arguments, and the affidavits, deposition transcripts, and other materials submitted in support of the parties' respective positions, the court will resolve both issues in favor of the Liquidating Supervisor.

### II. Comparative Fault

Prior to the commencement of this case, R. David Thomas and affiliated entities (the "Thomas Lenders") made various loans to and issued various guaranties of loans made by others to Wallace G. Wilkinson ("Mr. Wilkinson"), the principal of Wallace's Bookstores, Inc. (the "Debtor"). Those creditors or their successors in interest (the "Thomas Claimants") assert that they are entitled to recover damages suffered as a result of the credit extensions from the Debtor, under theories of fraud and (through RICO) mail fraud, wire fraud, and money laundering.[1] The Liquidating Supervisor contends that the Debtor's liability should be reduced on account of the Thomas Lenders' own negligence in extending the credit to Mr. Wilkinson. The Thomas Claimants deny that principles of comparative fault apply to intentional torts.[2]

At the outset, the Thomas Claimants contend that the law of Florida, not that of Kentucky, applies to the fraud claim. When the federal courts are called upon to resolve issues of state law in actions based on "diversity" jurisdiction, they must determine which state's laws govern by reference to the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Unless and until the Sixth Circuit overrules its decision in *United Construction Co. v. Milam*, 124 F.2d 670, 671 (6th Cir.1942), the same principle applies when the litigation is based on "bankruptcy" jurisdiction. *Accord, e.g., Bennett v. Macy*, 324 F.Supp. 409, 410 (W.D.Ky.1971).[3] Kentucky courts apply Kentucky substantive law in tort cases if "Kentucky has enough contacts to

1. The court previously rejected the Thomas Claimants' conversion theory.

2. Although the Liquidating Supervisor also uses the term "contributory negligence," his reply brief makes clear that he does not use the term in its technical sense, meaning the defense that a plaintiff is barred from any recovery for negligence if the injury resulted even in part from the plaintiff's own negligence. (Reply Memo. in Supp. of Mot. for Estimation of Thomas–Related Claims, at 5.)

3. Other courts within the Sixth Circuit have applied federal conflict of laws rules in bankruptcy cases, concluding that the Sixth Circuit would overrule *Milam* in an appropriate case in light of the enactment of the current Bankruptcy Code in 1978 and the Supreme Court's decision in *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946). *Limor v. Weinstein & Sutton (In re SMEC, Inc.)*, 160 B.R. 86, 89–91 (M.D.Tenn.1993); *Briggs Elec. Contracting Servs., Inc. v. Elder–Beerman*

justify applying Kentucky law." *Arnett v. Thompson,* 433 S.W.2d 109, 113 (Ky.1968). There is no question that there are sufficient contacts that would justify the application of Kentucky law to the Thomas Claimants' fraud claim.

■ Kentucky's comparative fault statute applies, by its own terms, "[i]n all tort actions," and the statute speaks of the allocation of "fault," not negligence. K.R.S. § 411.182(1)-(3). Indeed, the Kentucky Court of Appeals has rejected the argument that "apportionment between negligent and intentional tort-feasors is not required," seeing "no reason to create a distinction between the two." *Roman Catholic Diocese v. Secter,* 966 S.W.2d 286, 291 (Ky.App.1998) (apportioning punitive, as well as compensatory, damages). In addition, the Kentucky courts have applied the comparative fault statute in other intentional tort cases without discussion.

*E.g., Brewer v. Hillard,* 15 S.W.3d 1, 13–14 (Ky.Ct.App.1999) (intentional infliction of emotional distress). The Thomas Claimants cite the court to no Kentucky court decisions to the contrary.[4]

In light of the plain meaning of Section 411.182 of the Kentucky Revised Statutes, the court holds that any tort damages suffered by the Thomas Claimants may be allocated between and among them, the Debtor, and third parties in accordance with the parties' relative fault. Hence, any fault of the Thomas Lenders that contributed to their own injury would have the effect of reducing the amounts of their claims and, therefore, the court's estimate of the amount of the claims.[5]

## III. RICO Claims

### A. Enterprise

■ The Thomas Claimants' RICO claims are based on § 1962(a) and (c) of

*Stores Corp. (In re Elder–Beerman Stores Corp.),* 221 B.R. 404, 408 (Bankr.S.D.Ohio 1998). Note that *Elder–Beerman* held that the forum state's choice of law rules would be applied *as the federal choice of law rules* "where the case, while heard in a case arising out of federal question jurisdiction, could have been heard independently in a state court forum and is not reliant on federal bankruptcy law principles." *Id.* Thus, here, the reasoning of the *Elder–Beerman* court would result in the application of Kentucky choice of law rules even if *Milam* was not the law in this circuit.

4. The Thomas Claimants rely on the "majority rule" according to the Restatement (Second) of Torts and on a treatise. The Restatement section they cite relates to contributory negligence, not comparative fault. *See* RESTATEMENT (SECOND) OF TORTS § 467 Special Note (pointing out that principles of contributory negligence have been superseded by comparative fault statutes in many states). The cited treatise, according to the Thomas Claimants, takes the position that it should be the Kentucky rule that "a plaintiff's negligence is not grounds for apportioning fault against the plaintiff when the defendant is guilty of an intentional tort." (Resp. of

Thomas Claimants to Mot. for Estimation of the Thomas–Related Claims, at 13.) The Thomas Claimants did not provide the court with a copy of the discussion, but indicate that the author's opinion is based on an Illinois Supreme Court decision. However, that decision was made under the common law of comparative negligence, and relied in part on the public policy represented by the Illinois comparative fault statute ultimately enacted. That statute was limited by its own terms to "actions based on negligence, or product liability based on strict tort liability," *Burke v. 12 Rothschild's Liquor Mart, Inc.,* 148 Ill.2d 429, 170 Ill.Dec. 633, 593 N.E.2d 522, 527 (1992) (quoting Section 2–1116 of the Illinois Code of Civil Procedure), while the Kentucky statute applies "[i]n all tort actions, including products liability actions." The policies upon which the Illinois court relied (and the Restatement) cannot supersede the express language of KRS Section 411.182.

5. In addition, depending on the nature and extent of such fault, it could also have the effect of negating the "reliance" element of the fraud claims.

Title 18, United States Code. (Resp. of Thomas Claimants to Mot. for Estimation of the Thomas–Related Claims, at 28.) Subsection (a) prohibits persons from using or investing funds derived from racketeering activity or the collection of an unlawful debt[6] "in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Subsection (c) makes it unlawful for persons "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Accordingly, both provisions require the existence of an "enterprise." RICO defines that term as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

■ The Eighth Circuit has "identified three characteristics that distinguish a RICO enterprise: First, there must be a common or shared purpose that animates the individuals associated with it. Second, it must be an 'ongoing organization' whose members 'function as a continuing unit'; in other words, there must be some continuity of structure and of personnel. Third, there must be an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity." *U.S. v. Kragness,* 830 F.2d 842, 855 (8th Cir.1987) (citing *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)) (other citations omitted); *accord, e.g., U.S. v. Riccobene,* 709 F.2d 214, 221–22 (3d Cir.1983); *Perez–Rubio v. Wyckoff,*

718 F.Supp. 217, 241 (S.D.N.Y.1989); *Medallion TV Enters., Inc. v. SelecTV of Cal., Inc.,* 627 F.Supp. 1290, 1294 (C.D.Cal. 1986), *aff'd,* 833 F.2d 1360 (9th Cir.1987). A RICO "enterprise" may consist of a group of corporations, *Dana Corp. v. Blue Cross & Blue Shield Mut.,* 900 F.2d 882, 887 (6th Cir.1990), or of a corporation and its controlling shareholder, *e.g., Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir.1995); *United States v. Robinson,* 8 F.3d 398, 406–07 (7th Cir.1993); *Giuliano v. Everything Yogurt, Inc.,* 819 F.Supp. 240, 247 (E.D.N.Y.1993).

The Thomas Claimants allege that the enterprise consisted of (a) the Debtor, (b) bookstores located in various states, (c) Wallace's Book Company, Inc. ("WBC"), and (d) Mr. Wilkinson. The Thomas Claimants assert that the "common or shared purpose that animated" these entities was the perpetration of a Ponzi scheme. Specifically, they claim that the Debtor mailed out false financial statements so as to obtain loans to Mr. Wilkinson, which were used to repay other debts. They do not, however, explain the roles of the bookstores or WBC in the enterprise, i.e., how they shared a common purpose with the Debtor and Mr. Wilkinson. Nevertheless, the Debtor and Mr. Wilkinson alone could constitute an enterprise if the Thomas Claimants are able to prove their allegations that those two entities had a common or shared purpose, as it appears that they would then function as an ongoing organization and the relationship between the Debtor and its sole shareholder would seem to constitute an "ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity." The Thomas Claimants have suffi-

---

**6.** Although this case involves debts that the Thomas Claimants contend were fraudulently induced, they do not constitute "unlawful debts," within the meaning of RICO, because they are not gambling debts and are not claimed to be usurious. 18 U.S.C. § 1961(6).

ciently alleged the existence of a RICO "enterprise."

## B. Pattern of Racketeering Activity

■ RICO defines "racketeering activity" to include the types of activities alleged by the Thomas Claimants, i.e., mail fraud, wire fraud, and money laundering. 18 U.S.C. § 1961(1)(A). The requirement of a "pattern of racketeering activity" mandates "at least two acts of racketeering activity ... the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." *Id.* § 1961(5). The prerequisite of two predicate acts is a minimum requirement: a mere pair of acts does not necessarily establish a "pattern" of racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 237–38, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Moreover, the predicate acts must bear some relation to each other:

> In normal usage, the word "pattern" here would be taken to require more than just a multiplicity of racketeering predicates. A "pattern" is an "arrangement or order of things or activity," and the mere fact that there are a number of predicates is no guarantee that they fall into any arrangement or order. It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them "ordered" or "arranged."

*Id.* 492 U.S. at 238, 109 S.Ct. 2893 (citation omitted). There must be two or more acts that have " 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events' " as part of a continuing pattern. *Id.* at 240, 109 S.Ct. 2893.

■ The Thomas Claimants allege that the Debtor "sent numerous false and fraudulent audited and unaudited financial statements by U.S. mail to R. David Thomas and R.L. Richards, United, Union, and others" as part of a "pattern of defrauding the Thomas Claimants and other lenders and creditors of many millions of dollars and using those millions to continue the fraudulent business of WBI and for the personal benefit of Wilkinson." It appears that these allegations, if proven, would constitute a pattern of continuing acts having the same or similar purposes, results, participants, and methods of commission. While, as the Liquidating Supervisor points out, the scheme insofar as the Thomas Claimants are concerned turned out to be a relatively short-lived one, the Thomas Claimants allege that they were only one group of victims of a scheme spanning several years. Moreover, the Supreme Court has made clear that a *threat* of repeated activity may be enough to satisfy the "continuity" requirement. *Id.* at 241, 109 S.Ct. 2893; *see also Am. Eagle Credit Corp. v. Gaskins,* 920 F.2d 352, 354–55 (6th Cir.1990). Although the Thomas Claimants have not explained how the Debtor participated in wire fraud or money laundering and their allegations of mail fraud are rather vague, they have sufficiently alleged the existence of a "pattern of racketeering activity" for the purposes of the claims estimation proceeding.

## C. Illegal Investment; Participation in Enterprise

■ As mentioned above, RICO § 1962(a) prohibits persons from using or investing funds derived from racketeering activity "in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." The Debtor did not directly receive any funds as the result of

the alleged racketeering activity, so it could not use or invest such funds in an enterprise in interstate commerce. Mr. Wilkinson was the recipient of the funds generated by the alleged racketeering activity, and he invested some of the funds in the enterprise by remitting them to the Debtor, but it was Mr. Wilkinson—not the Debtor—that made use of the allegedly ill-gotten gains. The court, therefore, estimates the value of the Thomas Claimants's claim under § 1962(a) at zero.

 Subsection (c) of § 1962 makes it unlawful for persons associated with an enterprise engaged in interstate commerce to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The Supreme Court has held that to "conduct" the enterprise's affairs means to "lead, run, manage, or direct" the affairs, and that to "participate, directly or indirectly, in the conduct of such enterprise's affairs" means to take part in the direction of the affairs. *Reves v. Ernst & Young,* 507 U.S. 170, 177–79, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The Thomas Claimants have not alleged that the Debtor participated in the operation and management of the enterprise. *Id.* 507 U.S. at 185, 113 S.Ct. 1163. Although the Debtor may have been "involved" in the enterprise and may have "aided and abetted" and "assisted" its alleged racketeering activity, the Court concluded that that is not enough. *Id.* at 177–78, 113 S.Ct. 1163. Rather, the Supreme Court held "that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must participate in the operation or management of the enterprise itself." *Id.* at 185, 113 S.Ct. 1163 (citation omitted). All indications are that Mr. Wilkinson was the only person satisfying this requirement. It was Mr. Wilkinson who used his control over the Debtor to assist him in obtaining loans from the Thomas Lenders; there are no allegations that it was the Debtor who exerted control over the enterprise to obtain the loans. The court, therefore, estimates the value of the Thomas Claimants' claim under § 1962(c) at zero.

### IV. Conclusion

For the foregoing reasons, the court will enter a separate order limiting the scope of the evidentiary hearing in this matter to the Thomas Claimants' claim for common law fraud and the Liquidating Supervisor's defense of comparative fault.